**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN GARCIA CARDIEL,<br><br>Defendant. | Civil Action No. 2:26-cv-619<br><br>**COMPLAINT TO REVOKE NATURALIZATION** |

## I. PRELIMINARY STATEMENT

1. The United States of America brings this civil action against Defendant Martin Garcia Cardiel ("Defendant") to revoke his naturalized United States citizenship. This action under 8 U.S.C. § 1451(a) is based on Defendant's unlawful conduct prior to naturalizing. Specifically, before he became a citizen of the United States, Defendant engaged in criminal activity that he concealed throughout the naturalization process and that disqualified him from obtaining United States citizenship.

2. Before he naturalized, Defendant sexually abused two young children, sisters, who were neighbors and friends of his daughters. *State of Utah v. Garcia-Cardiel*, 2024 UT App 174, ¶ 2. Defendant began sexually abusing the girls shortly after they moved into the neighborhood when they were seven and eight years old. *Id.* Over the next five years, they spent most afternoons and evenings at Defendant's house while their mother was at work or school and there, he forced the sisters to sit on his lap and to kiss him, he touched their breasts and vaginas, and on at least one occasion, he put his hand down one girl's pants and inserted his finger into her vagina despite the young girl crying and telling him no. *Id*. ¶¶ 3, 4, and 6.

3. In October 2011, Defendant illegally procured U.S. citizenship by knowingly concealing material facts and willfully misrepresenting his past criminal conduct during his naturalization process. In January 2022, a Utah state jury convicted Defendant of 19 counts of Aggravated Sexual Abuse of a Child, in violation of Utah Criminal Code § 76-5-404.1(4). Accordingly, and as shown below, Defendant unlawfully naturalized, and this Court must order his denaturalization.

## II. JURISDICTION, PARTIES, AND VENUE

4. This is an action filed under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel Defendant's Certificate of Naturalization Number 34426503.

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 for this cause of action under 8 U.S.C. § 1451(a).

6. Plaintiff is the United States of America.

7. Defendant is a naturalized U.S. citizen and a native of Mexico.

8. Venue is proper in this district under 8 U.S.C. § 1451(a) and 28 U.S.C. § 1391 because Defendant's residence prior to incarceration is within the jurisdiction of this Court.

## III. FACTUAL BACKGROUND

### A. Defendant's Immigration History and Naturalization Application

9. On December 1, 1990, Defendant was admitted to the United States as a lawful permanent resident. *See* Exhibit A, Affidavit of Good Cause ¶ III.

10. On or about April 8, 2011, Defendant signed his application for naturalization, Form N-400, Application for Naturalization ("N-400"), which was received by the Salt Lake City Field Office of U.S. Citizenship and Immigration Services ("USCIS") on or about April 15, 2011.

11. A true and complete copy of N-400, except for redactions of personally identifying information immaterial to this action, is attached hereto as Exhibit B.

12. Part 10, Question 15 of the N-400 asks: "Have you **ever** committed a crime or offense for which you were **not** arrested?" Exhibit B, Part 10. (emphasis in original)

13. In response to Part 10, Question 15 of the N-400, Defendant checked the box for "No." *Id*.

14. Part 10, Question 23, asks of the N-400: "Have you **ever** given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" *Id.* (emphasis in original)

15. In response to Part 10, Question 23 of the N-400, Defendant checked the box for "No." *Id.*

16. Part 11 of the N-400 requires the applicant to "certify … under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, is all true and correct." *Id.*, Part 11.

17. Prior to filing his N-400, Defendant signed his N-400 under that certification. *Id.*

18. On August 2, 2011, a USCIS officer placed Defendant under oath and conducted an interview regarding his N-400 to determine his eligibility for naturalization ("Naturalization Interview").

19. During the Naturalization Interview, and consistent with his responses on the N-400, Defendant said, orally and under oath, that he had never given false or misleading information for the purpose of obtaining any immigration benefit or to prevent deportation, exclusion or removal. *Id.*, Part 10.

20. At the end of the interview, Defendant signed his N-400 at Part 13 swearing for a second time that the contents of his naturalization application were true to the best of his knowledge and belief. *Id.,* Part 13.

21. On September 8, 2011, based on Defendant's representations in his N-400 and his own sworn testimony during his Naturalization Interview, USCIS approved Defendant's naturalization application. *Id.*, p.1.

22. On October 12, 2011, Defendant prepared the final pre-naturalization paperwork by filing, signing, and submitting to USCIS a Form N-445, Notice of Naturalization Ceremony ("N-445").

23. A true and complete copy of the N-445, except for redactions of personally identifying information immaterial to this action, is attached hereto as Exhibit C.

24. Question 3 of the N-445 reads, in relevant part, "AFTER [August 2, 2011,] the date you were first interviewed on your Application for Naturalization, Form N-400 … (3) Have you knowingly committed any crime or offense, for which you have not been arrested"? Exhibit C, p.2.

25. In response to Question 3 of the N-445, Defendant checked the box for "No." *Id.*

26. The N-445 requires the applicant to "certify that each of the answers shown above were made by me or at my direction, and that they are true and correct." *Id.*

27. Defendant signed the N-445 under that certification on October 12, 2011. *Id.*

28. On October 12, 2011, Defendant took the oath of allegiance and was admitted to U.S. citizenship, and USCIS issued Defendant his Certificate of Naturalization No. 34426503 ("Certificate of Naturalization").

29. A true and complete copy of the Certificate of Naturalization, except for redactions of personally identifying information immaterial to this action, is attached hereto as Exhibit D.

### B. Defendant's Criminal History

30. On at least July 12, 2007, August 8, 2007, and August 18, 2007, Defendant sexually abused two young children who were neighbors and friends of his daughters. *See* Exhibit A, Affidavit of Good Cause, ¶ X(C)(1)

31. As a result, on December 21, 2021, the state of Utah filed an amended information charging Defendant with twenty-three counts of Aggravated Sexual Abuse of a Child, in violation of Utah Criminal Code § 76-5-404.1(4). *See* Exhibit E - Criminal Records, Part 1 - Amended Information. *See* also, State *v. Cardiel*, Case No. 191902579 (Utah Dist. Ct. Dec. 21, 2021).

32. On January 10, 2022, a Utah state jury found Defendant guilty of 19 counts of the Amended Information. *See* Exhibit E – Criminal Records, Part 2 - Sentence and Judgment.

33. On May 16, 2022, the court sentenced Defendant to 15 years to life imprisonment for each of the nineteen counts of conviction, with counts 1-7 to be served concurrently, counts 8 - 19 to be served concurrently, and counts 1 and 8 to be served consecutively. *Id.*

34. Defendant remains in prison.

## IV. GOVERNING LAW

### A. Congressionally Imposed Prerequisites to the Acquisition of Citizenship

35. No applicant has a right to naturalization "unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917). Indeed, the Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (An individual "who seeks political rights as a member of this Nation can rightfully obtain

them only upon the terms and conditions specified by Congress.") (quoting *Ginsberg*, 243 U.S. at 474).

36. Congress has mandated that an individual may not naturalize unless that person "during all periods referred to in this subsection has been and still is a person of good moral character . . . ." *See* 8 U.S.C. § 1427(a)(3).

37. The required statutory period for good moral character begins five years before the date the applicant files the application for naturalization, and it continues until the applicant takes the oath of allegiance and becomes a U.S. citizen. *Id.*; 8 C.F.R. § 316.10(a)(1).

38. Although Congress has not specifically defined what constitutes good moral character for naturalization purposes, the Immigration and Nationality Act lists certain classes of applicants who cannot be found to have the requisite good moral character. *See* 8 U.S.C. § 1101(f).

39. Congress has explicitly precluded an individual from establishing the good moral character necessary to naturalize if during the statutory period he commits certain offenses described in 8 U.S.C. § 1182, of which he was convicted or to which he admits. 8 U.S.C. § 1101(f)(3).

40. Among the offenses described in 8 U.S.C. § 1182 that preclude an individual from establishing the required good moral character are the commission of crimes for which he or she receives multiple criminal convictions with aggregate sentences of confinement of five years or more. 8 U.S.C. § 1182(a)(2)(B).

41. Congress has also explicitly precluded individuals who give false testimony for the purpose of obtaining immigration benefits from establishing the good moral character necessary to naturalize. 8 U.S.C. § 1101(f)(6).

42. Further, Congress created a "catch-all" provision, which states, "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). (catch-all provision)

43. Thus, an individual who, during the statutory period, commits an unlawful act adversely reflecting upon his or her moral character cannot meet the good moral character requirement unless he or she proves that extenuating circumstances existed. *See* 8 C.F.R. § 316.10(b)(3)(iii); *see also* 8 U.S.C. § 1101(f). (catch-all provision)

44. "[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character. It is enough that the offense was 'committed' during that time." *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) (discussing 8 U.S.C. § 1101(f)(3) and 8 C.F.R. § 316.10(b)(3)(iii)); *United States v. Al-Aqaili*, 550 F. App'x 356, 358 (8th Cir. 2014) (reiterating that, for good moral character analysis, "it is of no consequence that [Al-Aqaili's] conviction occurred after he was already naturalized.") (citing *United States v. Jean-Baptiste*, 395 F.3d 1190, 1192 (11th Cir. 2005), *cert. denied*, 546 U.S. 852 (2005)). When an individual has been convicted, he or she is collaterally estopped from contesting all issues necessarily decided in the criminal matter. *See id.* at 663 (citing *United States v. Jean-Baptiste*, 395 F.3d 1190, 1192 (11th Cir. 2005), *cert. denied*, 546 U.S. 852 (2005)) (stating that a defendant "may not . . . re-litigate issues decided in his criminal case" in a subsequent civil denaturalization action.)

## B. <u>The Denaturalization Statute</u>

45. Congress enacted 8 U.S.C. § 1451 in recognition of the fact that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that

are material to the decision on whether to grant his or her naturalization application.

46. Under 8 U.S.C. § 1451(a), the Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if his naturalization was either:

(i) illegally procured; or,

(ii) procured by concealment of a material fact or by willful misrepresentation.

47. Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506.

48. Naturalization was procured by concealment of a material fact or by willful misrepresentation, where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

49. Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation or concealment of a material fact, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## V. CAUSES OF ACTION

### COUNT I

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (Unlawful Acts)

50. The United States re-alleges and incorporates by reference paragraphs 1 through 49 of this complaint as if set forth herein.

51. Defendant was required to establish that he was a person of good moral character during his statutory period, which ran from April 15, 2006 (the date five years before his filed

N-400 was received), until the date he became a United States citizen on October 12, 2011. *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

52. Defendant could not establish the requisite good moral character for naturalization because he committed unlawful acts during the statutory period that reflected adversely upon his moral character, and no extenuating circumstances exist that would lessen his guilt. *See* 8 C.F.R. § 316.10(b)(3)(iii); 8 U.S.C. § 1101(f) (catch-all provision).

53. As set forth above, Defendant committed Aggravated Sexual Abuse of a Child, in violation of Utah Criminal Code § 76-5-404.1(4) from at least July 2007 until August 2007, during his statutory period.

54. As set forth above, for committing those unlawful acts, Defendant was convicted, after he naturalized, on 19 counts of Aggravated Sexual Abuse of a Child, in violation of Utah Criminal Code § 76-5-404.1(4).

55. There are no extenuating circumstances with regard to Defendant's unlawful acts that render his conduct less reprehensible than it otherwise would be or that would tend to lessen his guilt. As such, he cannot avoid the regulatory bar on establishing good moral character found at 8 C.F.R. § 316.10(b)(3)(iii).

56. Defendant's crimes so adversely reflected on Defendant's moral character during the statutory period that no evidence of his good moral character would permit Defendant to satisfy his burden of establishing good moral character as required for naturalization.

57. Because Defendant committed unlawful acts that adversely reflected on his moral character during the statutory period, and he cannot demonstrate extenuating circumstances, he was barred under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii) from showing that he had the good moral character necessary to become a naturalized U.S. citizen.

58. Because Defendant was not a person of good moral character, he was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

59. Because Defendant was ineligible to naturalize, he illegally procured his naturalization, and this Court must revoke his naturalization under 8 U.S.C. § 1451(a).

**COUNT II**

**ILLEGAL PROCUREMENT OF NATURALIZATION**
**LACK OF GOOD MORAL CHARACTER**
**(False Testimony)**

60. The United States re-alleges and incorporates by reference paragraphs 1 through 59 of this complaint as if set forth herein.

61. As outlined above, Defendant was required to establish that he was a person of good moral character from April 15, 2006, until the date he became a United States citizen on October 12, 2011. *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

62. Defendant was statutorily precluded from showing that he was a person of good moral character during the statutory period because he gave false testimony under oath for the purpose of securing an immigration benefit, specifically naturalization. 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi).

63. During the statutory period, Defendant provided false testimony during his Naturalization Interview when he stated under oath that he had never given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal.

64. That testimony was false because Defendant certified under penalty of perjury on April 8, 2011 that he had not committed any crimes or offenses for which he was not arrested

when, in fact, Defendant did commit the crime of sexual abuse of a child in at least July and August 2007 for which he was not arrested.

65. Defendant provided this false testimony for the purpose of obtaining an immigration benefit, namely, naturalization.

66. Because Defendant provided the false testimony under oath for the purpose of obtaining his naturalization, he was therefore ineligible to naturalize because he was barred under 8 U.S.C. § 1101(f)(6) from showing that he had the good moral character necessary to become a naturalized citizen.

67. Because Defendant could not establish that he was a person of good moral character during the statutory period, he was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

68. Because Defendant was ineligible to naturalize, he illegally procured his naturalization, and this Court must revoke his naturalization under 8 U.S.C. § 1451(a).

## COUNT III

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (Multiple Criminal Convictions)

69. The United States re-alleges and incorporates by reference paragraphs 1 through 68 of this complaint as if set forth herein.

70. As outlined above, Defendant was required to establish that he was a person of good moral character from April 15, 2006, until the date he became a United States citizen on October 12, 2011. *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

71. An applicant for naturalization who committed crimes during his statutory period for which he received multiple criminal convictions and for which the aggregate sentences

of confinement were 5 years or more cannot be found to be a person of good moral character. 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(B)).

72. Defendant committed crimes during his naturalization process for which he received multiple convictions.

73. As a result of those convictions, Defendant was sentenced to aggregate sentences of confinement of five or more years in prison.

74. Because Defendant committed crimes during the statutory period for which he received multiple convictions and a prison sentence of more than five years, he lacked the good moral character necessary to become a naturalized U.S. citizen. 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(B)).

75. Because Defendant was not a person of good moral character, he was ineligible to naturalize. *See* 8 U.S.C. § 1427(a)(3).

76. Because he was ineligible to naturalize, Defendant illegally procured his naturalization, and this Court must therefore revoke his naturalization as provided under 8 U.S.C. § 1451(a).

## COUNT IV

## PROCUREMENT OF NATURALIZATION BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION

77. The United States re-alleges and incorporates by reference paragraphs 1 through 76 of this complaint as if set forth herein.

78. Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's citizenship and cancel his Certificate of Naturalization because he procured his naturalization by concealment of a material fact and by willful misrepresentation.

79. As set forth in paragraphs 62 through 66 above, throughout his naturalization process, Defendant willfully misrepresented and concealed his criminal conduct and presented false testimony to obtain an immigration benefit.

80. At no point during the naturalization process did Defendant disclose his criminal conduct, but instead knowingly presented false information that he had not committed any criminal acts.

81. Further, at no point during the naturalization process did Defendant disclose that he had given false or misleading information to any U.S. Government official while applying for any immigration benefit.

82. Defendant knew his misrepresentations and concealment were false and misleading and he acted willfully in providing such misrepresentations and concealment.

83. Defendant's misrepresentations were material to determining his eligibility for naturalization because they did not allow USCIS to make an informed decision when approving his naturalization application. In addition, Defendant's conduct related directly to a determination of whether he could establish the good moral character required under 8 U.S.C. § 1427(a)(3).

84. Had Defendant disclosed the truth about his criminal conduct, USCIS would have denied Defendant's naturalization and would not have allowed him to take the oath of allegiance because of his ineligibility.

85. Defendant thus procured his naturalization by willful misrepresentation and concealment of material facts, and this Court therefore must revoke his naturalization pursuant to 8 U.S.C. § 1451(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the United States of America, requests:

1. A finding that Defendant illegally procured his citizenship;

2. A finding that Defendant procured his naturalization by concealment of material facts and willful misrepresentation;

3. Judgment revoking and setting aside Defendant's naturalization and canceling Certificate of Naturalization No. 34426503, effective as of the original date of the order and certificate, October 12, 2011;

4. Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages under any document which evidences U.S. citizenship obtained as a result of his October 12, 2011 naturalization;

5. Judgment requiring Defendant to surrender and deliver, within ten (10) days of the entry of judgment against him, his Certificate of Naturalization and any copies thereof in his possession or control (and to make good faith efforts to recover and immediately surrender any copies thereof that he knows are in the possession or control of others) to the Attorney General through his representative, undersigned counsel;

6. Judgment requiring Defendant to surrender and deliver, within ten (10) days of the entry of judgment against him, any other indicia of U.S. citizenship – including, but not limited to, U.S. passports (and passport cards, if applicable), as well as any enhanced driver's licenses, whether valid or expired – and any copies thereof in his possession or control (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession or control of others), to the Attorney General through his representative, undersigned counsel; and

7. Judgment granting the United States such other relief as may be lawful and proper in this case.

Dated: July 6, 2026

Respectfully submitted,

MELISSA HOLYOAK
United States Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation Branch

/s/ *Steven Scott*
STEVEN SCOTT
Illinois Bar No. 6306957
Trial Attorney
United States Department of Justice
Enforcement & Affirmative Litigation Branch
450 Fifth Street NW, Ste. 6400 South
Washington, D.C. 2001
Tel.: (202) 286-5293
Steven.r.scott@usdoj.gov

*Counsel for Plaintiff*